JONES *v.* NASH.

CONTRACTS—CONSTRUCTION—LIMITATION—AMBIGUITY—WORDS AND
PHRASES.

A contract of sale of a store building and fixtures, de-
scribing the fixtures as "all the store fixtures except hat
rack, being the same as sold to Kinyon Bly by Solomon
Stern," and further providing that the words quoted
should be construed to mean just what is said, referring
to two persons who witnessed the transaction between
said Kinyon Bly and Solomon Stern, construed, and *held*,
not ambiguous, but said language should be construed as
a limitation of the fixtures sold in the contract to those
bought by Kinyon Bly of Solomon Stern.

Error to Cass; Des Voignes, J. Submitted January
15, 1919. (Docket No. 47.) Decided April 3, 1919.

Assumpsit by Carroll S. Jones, administrator with
the will annexed of the estate of Kinyon Bly, deceased,
against Joel J. Nash and another for a balance due
on a contract. Judgment for plaintiff for less than
amount claimed. He brings error. Reversed.

*Clarence M. Lyle*, for appellant.

*Otis Huff*, for appellees.

MOORE, J. In October, 1917, this suit was brought
to recover the balance due on a contract given by the
defendants to Kinyon Bly in his life time, February
8, 1907. It is conceded by both sides that at the time
of the trial there was $7,163.75 due plaintiff on said
contract, but defendants claimed a recoupment for
$708.64, with interest thereon at 5 per cent. since
February 8, 1907, for fixtures which they claim were
not delivered. The court submitted the claimed re-
coupment to the jury and they allowed it in full, and

See note in 17 L. R. A. 720.

rendered a verdict in favor of the plaintiff for $6,-086.11. The case is brought here by the plaintiff by writ of error.

In September, 1904, Mr. Bly bought Solomon Stern's undivided one-half interest in the Centennial block in the village of Marcellus, and his undivided one-half interest in such personal property and store fixtures in said block as they owned together. The Centennial block premises is a large three-story brick store building. Bly and Stern had rented the building to S. Stern & Company, who have conducted a business therein continuously for over 30 years. Solomon Stern was a member of Stern & Company. Kinyon Bly was not a member. It is the claim of the plaintiff that Bly and Stern had no personal property in this block except what was used in the public hall in the second story consisting largely of chairs and stoves, and such store fixtures on the first floor as landlords usually furnish tenants of a similar store building.

It is the claim of the plaintiff that S. Stern & Company owned the stock of goods and all their equipment therein used by them in conducting their store business and had built into the store building a valuable hat rack for displaying hats, which hat rack was excepted in Stern's sale to Bly, and again excepted in Bly's re-sale to the defendants some three years later.

The essential portions of the contract between Mr. Bly and the defendants calling for construction read:

"Memorandum of agreement made and entered into this 5th day of February, A. D. 1907, by and between Kinyon Bly, a widower of Marcellus, Cass county, Michigan, hereinafter designated as the party of the first part, and Dr. Ernest Shillito and Joel J. Nash, both of Marcellus, Cass county, Michigan, parties of the second part, witnesseth:

"That the said party of the first part has this day sold and agreed to convey, or have conveyed to parties of the second part, or their heirs or assigns, the fol-

lowing described real estate and personal property, located in the village of Marcellus, Cass county, Michigan, and described as follows, to-wit: All the real estate and personal property belonging to the said Kinyon Bly and situate on southwest corner of Main and Center streets, on block one south and one west, and all the store fixtures except hat rack, being the same as sold to Kinyon Bly by Solomon Stern, for the following consideration," etc., etc.

"It is mutually agreed and understood that the description to real estate sold under this contract shall be more definitely described in the warranty deed which constitutes a part of this contract and the term 'all the store fixtures except the hat rack, being the same as sold to Kinyon Bly by Solomon Stern,' shall be construed to mean just what is said, and reference is made to Thomas Vincent and Carroll S. Jones, who were both called to witness the transaction referred to between the said Kinyon Bly and Solomon Stern."

We quote from the brief of appellee:

"The principal dispute in the case arose over the store fixtures, it being the claim of the defendants that at the time of the said purchase that Bly represented to them that he was the owner of all the store fixtures in the said store except the hat rack, and that the same was worth one thousand dollars, and that he was conveying them all of the said store fixtures except the hat rack. The defendants claim that the fixtures were never delivered to them and that they are entitled to an allowance for the market value of the same at the time of the purchase, together with interest at five per cent. against the claim of the plaintiff. * * *

"We further contend that the last words, 'being the same as sold to Kinyon Bly by Solomon Stern' are of but little import or significance and should be treated as surplusage and a mere recital. It matters not whether Stern owned the fixtures at one time or not. If Bly represented that he was selling all the store fixtures except the hat rack, the fact whether he bought them of Stern was immaterial. It would not enhance the value of the same because Stern might have owned them at one time. The contract might

have read that they were the same store fixtures which Bly purchased of Henry Clay or Daniel Webster, and in such a case, would the defendants have to prove that the said fixtures were purchased of Clay or Webster before they could recover?"

We understand it to be the claim of the defendants that they bought all of the store fixtures and that Stern & Company claim to own a good share of them, and that therefore they have a claim for recoupment. The defendants caused an appraisal of all the fixtures in the building to be made and it was introduced in evidence over the objection that it must be shown that they were sold to Mr. Bly by Solomon Stern.

The trial court in his charge to the jury undertook to construe the contract; among other things said to them was the following:

"Now you will see from the concluding paragraph here, that the vendor and the vendee construed by this contract itself what would be considered as the fixtures passing under this contract would be 'the fixtures sold by Solomon Stern to Kinyon Bly,' and is specially referred to by two witnesses who were called at the time.

"The construction that the court places upon that —and you are not bound by this that I am about to state—but the scrivener in writing that sought to imply that the understanding between the two parties was this: That Mr. Vincent and Mr. Jones had been present at the time of the conveyance of the interest of Mr. Stern and Mr. Bly and that at that time it was discussed and talked over as to what was the personal property, or rather, the fixtures passing under it, and therefore to construe this contract, the parties both entered into an arrangement whereby whatever these parties understood or stated were the actual articles passing at that time would be considered as the fixtures here. Now the court permitted the testimony, and would have permitted the testimony of both these witnesses if they were living, as to what was said at the time, relating to the fixtures when this sale was made by Stern and Bly. Unfortunately one of

the witnesses, Mr. Vincent, is now deceased. The one witness remaining to that transaction between Mr. Stern and Mr. Bly, referred to in this contract, is Mr. C. S. Jones, the administrator in this case, and when interrogated upon that paragraph as to what he understood and to what was said rather, between the parties at the time of this conveyance of Stern to Bly, the witness Jones testifies that it was to include all the store fixtures except the hat rack, the same being all the 'other' fixtures sold by Mr. Stern to Mr. Bly. Now that comes right back, under that testimony, to the very language supported in the first part of the paragraph, to-wit: 'The fixtures sold by Mr. Stern to Mr. Bly.'

"It is the claim of the defendant likewise, that some several years ago—for you to remember, and the testimony, likewise—that Mr. Jones in referring to this in an affidavit, stated that he remembers being called to witness the transaction between Stern and Bly, relative to this transfer; that it was also witnessed by Mr. Vincent and the transfer from Stern to Bly was understood by and between them to include 'All the store fixtures except the hat rack.' The witness at this time adds to it the words, 'The same being all the store fixtures sold by Mr. Stern to Mr. Bly.' I simply refer to the affidavits because counsel for the defendant placed some stress upon the fact that in the first instance, Mr. Jones does not refer to the latter part there, 'the same being fixtures sold by Mr. Stern to Mr. Bly.' However, Mr. Jones at this time testifies very clearly that that statement was made, and it is for you to determine, in the light of his statements now and the affidavit and the other witnesses as to that fact."

In another part of the charge he stated:

"But, gentlemen, they can claim no more than this contract under a fair interpretation will allow them to claim. If they entered into a contract, whereby they agreed that they should receive for fixtures the things that were sold by Stern to Bly, then all your duty here is to determine what were the things sold by Stern to Bly, and if the defendants received all of the things sold by Stern to Bly, then they are not

entitled to any recoupment or any deduction on this bill. If, upon the other hand, gentlemen, you find that they were under the terms of this contract, under the evidence here, entitled to things that Mr. Stern did sell to Mr. Bly and has not received them, then they are entitled to recover the fair market value of those several items and have them deducted from the total sum as claimed by the plaintiff in this case."

It is claimed by the plaintiff that the court erred in not directing a verdict for the plaintiff for the full amount unpaid on the contract; that it was error to admit the testimony of the value of all the store fixtures and that the court erred in that portion of the charge which we have quoted.

The contract is not ambiguous. "All the store fixtures except the hat rack being the same as sold to Kinyon Bly by Solomon Stern." Again: "and the term 'all the store fixtures except the hat rack being the same as sold to Kinyon Bly by Solomon Stern' shall be construed to mean just what is said, and reference is made to Thomas Vincent and Carroll S. Jones who were both called to witness the transaction referred to between the said Kinyon Bly and Solomon Stern." This language should be construed as a limitation of the fixtures sold in the contract between Mr. Bly and the defendants to those bought by Mr. Bly of Solomon Stern. It is sought to justify the admission of the appraisal as to values and the amount allowed by way of recoupment by the following testimony. One of the witnesses who made the inventory and appraisal testified:

"I had a conversation with Mr. Bly some time after this inventory was made.

"Q. Where did you have that conversation?

"A. In Mr. Nash's store. Mr. Bly was sitting in the front end of the store, passing along he called me in. He had heard that I assisted Mr. Nash in this inventory and made some inquiries about it.

"Q. State what was said.  *  *  *.

"*A.* During the conversation we had, Mr. Bly asked me what we placed the value of those fixtures and that furniture at. Why, my recollection is that I told him —I knew at the time, of course, but after a lapse of ten years, not being interested—why, my memory is now that I told him just what we did. Why, he smiled a little at me and, why, he says, 'Why, Schall, I paid around a thousand dollars for those fixtures."

Another witness testified:

"Mr. Bly was in Nash's drug store a good many times. He called there to collect payments on this contract.

"*Q.* You may state whether you have ever heard any conversation between Mr. Nash and Mr. Bly or not?

"*A.* I have heard the question talked a great deal.

"*Q.* Did you ever hear Mr. Bly make any reference to these fixtures?

"*A.* Yes, sir.

"*Q.* Mentioned in the contract?

"*A.* Yes, sir.

"*Q.* Tell the jury what was said.   *   *   *

"*A.* After the contract; yes, sir. The conversations have been held in the store in regard to the contract. I have heard him say any number of times that the fixtures in the store belonged to him; and also in his remarks he always valued them at $1,000."

There was also a statement made in an *ex parte* affidavit of Mr. Jones. It will be observed that none of this testimony goes to the questions of what fixtures were bought by Mr. Bly of Mr. Stern nor to the value of the fixtures so bought. It should not be forgotten that at the time the contract was made involved in this controversy Stern & Company were in possession of the store and had been for a long time and the evidence is clear that Mr. Bly regarded the limitation in the contract as important. There is no competent testimony in the case as to what fixtures were sold by Solomon Stern to Mr. Bly except the testimony of Mr. Stern himself, and that is to the effect, we quote:

"*Q.* What store fixtures were sold by you to Mr. Bly?

"*A.* Well, now, there is some counters, tables, some gas fixtures. I think some of the electric lighting, part of it, all the undivided property, chairs in the Centennial hall, a carpet, and some clothing tables which were owned by Stern and Bly. S. Stern & Company owned the safe, cash carrier, looking glasses, triple mirror, 3 show cases, part of clothing tables, 14 clothing racks, clothing cabinet, ribbon and thread case, computing scales, platform scales, roll top desk, rack for holding rugs, stoves below belong to Stern & Co., two folding tables, small cabinet, 2 long settees, 8 chairs, cheese case and cracker case, 6 paper holders, 1 barrel truck, 1 large steel safe, the electric lamps and improvements on wiring, display boxes, typewriter, coffee mill, upright rack for holding ladies' hose, 100 coat and suit hangers, 6 twine holders, half a dozen measures, 20 display stands. * * *

"The property that belongs to S. Stern & Company never belonged to Stern and Bly. None of the property that I have testified to as belonging to S. Stern & Company was sold by me to Mr. Bly."

As the jury allowed by way of recoupment the value of all of the fixtures it is clear the verdict in favor of the plaintiffs is much too small.

Judgment is reversed and a new trial is ordered, with costs to appellant.

BIRD, C. J., and STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred. OSTRANDER, J., did not sit.